UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:10-CV-00214-JMH

DARREN KEYS                                                    PETITIONER


VS:                    **MEMORANDUM OPINION AND ORDER**


D. HICKEY, Warden                                            RESPONDENT

                    **      **      **      **      **

     Darren Keys, an individual currently in the custody of the

Federal Bureau of Prisons ("BOP") and incarcerated in the Federal

Medical Center, in Lexington, Kentucky, has submitted a *pro se*

Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241,

and has paid the district court's habeas filing fee.

     The Petition is before the Court for screening.  28 U.S.C.

§ 2243; *Harper v. Thoms*, 2002 WL 31388736, at *1 (6th Cir. 2002).

During screening, the allegations are taken as true and liberally

construed in the *pro se* Petitioner's favor.  *Urbina v. Thoms*, 270

F.3d 292, 295 (6th Cir. 2001).  However, the Court may dismiss the

Petition at any time, or make any such disposition as law and

justice require, if it determines that the Petition fails to

establish adequate grounds for relief.  *Hilton v. Braunskill*, 481

U.S. 770, 775 (1987).

     This action concerns an incident that occurred on May 29,

2006, while Petitioner was an inmate at the Federal Correctional

Institute at Schuylkill, Pennsylvania ("FCI-Schuylkill"), a

minimum-security camp, wherein he was charged with escape, a Code 200 violation. Petitioner was found guilty of the escape offense, resulting in the Disallowance of Good Conduct Time ("GTC") of 27 days and the Forfeiture of Non-Vested GCT of 60 days, among other sanctions, including his being placed in Disciplinary Segregation for 30 days.

Petitioner claims that the escape charge was fabricated, was based on falsified government documents to cover-up the prison staff's failure to respond to an emergency, and was retaliatory, in violation of his First Amendment rights. Petitioner seeks the expungement of the escape charge from his record and the restoration of 87 days of GTC. For the reasons set forth below, his petition will be denied and this action will be dismissed.

## FACTUAL BACKGROUND

The incident giving rise to the escape charge against Keys is described in Incident Report #1472661, as follows:

> On May 29, 2006, at approximately 2:30 a.m., an official count of the Camp was announced and conducted. Upon completing the count at Camp #2, two inmates were found to be missing. A bed book count was conducted and the missing inmates were identified as Darren Keys, Reg. No. 33000-037, and XXXXXXXXXXXXX. Available staff were dispatched to the Camp to search the buildings and conduct a recount, with negative results. The two inmates were placed on escape status. At approximately 4:00 a.m., the Control Center received information pertaining to an unidentified vehicle departing the institution grounds. At approximately 4:10 a.m., Camp #2 was counted again and inmate Keys was found in his assigned bunk. Inmate Keys was placed in the Special Housing Unit pending further investigation. Inmate XXXXXXXXXXX remains on escape status.

Incident Report, p. 1 (*see* Record No. 4).

Keys denied the charge, claiming that he never left the camp. The Disciplinary Hearing Committee referred the charge to the Disciplinary Hearing Officer ("DHO") for further hearing. The DHO conducted a hearing on June 26, 2006. Ms. M. Lucas was the inmate staff representative present with Keys at the DHO hearing. Keys waived his right to staff representation and witness testimony and provided the following statement to the DHO:

### III. PRESENTATION OF EVIDENCE

. . .

B. Summary of inmate statement:

At the onset of this hearing, inmate Darren KEYS, Reg. No. 33000-037, was advised of his Rights before the DHO, indicated he understood them (waived staff representation and witness testimony) and chose to provide the following statement:

KEYS stated: "I was inside of the ventilation system in order to direct air flow in my cubicle." KEYS stated: "I was stuck in the vent and I was yelling for the officer and another inmate XXXXXXX knew I was up there." I had nothing to do with any vehicle driving onto the reservation or with inmate XXXXXXXXX. KEYS submitted a written request to have the DHO hearing postponed until he received copies of all similarly situated incidents, a copy of the construction company's complaints for the ventilation system as well as several other witnesses. NOTE: Inmate KEYS did not indicate he wanted any witnesses on the BP-294 and has attempted to delay his hearings. The witnesses and information he requested did not have any pertinence to the incident.

No procedural issues were cited, nor was any documentary evidence provided for consideration.

DHO Report, p. 1 (*see* Record No. 4).

The DHO found Keys guilty of the escape charge.[1]  In considering that charge, the DHO relied on documentary evidence (memoranda) dated May 29, 2006, written by Correctional Officers Lt. Reed, R. Archer, S. Frederick, and W. Gotshall, concerning their knowledge of the series of events on May 29, 2006, leading to the escape charge against Keys.  The DHO also relied on confidential information (which was not disclosed to Keys) from a confidential informant who had been previously reliable.  The sanctions imposed included 30 days in Disciplinary Segregation, Disallowance of 27 days of GCT, Forfeiture of 60 days of Non-Vested GCT, and loss of phone, visitation, and commissary privileges for two years.  The DHO also recommended a disciplinary transfer to an institution with a greater security level.  *Id.* at p. 3.

Keys appealed the DHO decision; however, the appeal  was untimely.  He did not commence the exhaustion of administrative remedies process until July of 2009, approximately three (3) years after the DHO decision.  Keys had 20 days from the DHO decision in which to appeal same.  Although he exhausted his administrative remedies, he was advised at all levels that the appeal was

_____

[1] To reiterate, the DHO hearing was conducted on June 26, 2006; however, the date of the DHO decision is unknown to the Court.  The DHO Decision form is a 4-page form.  Keys only provided the Court with pages 1-3 of the DHO Decision and omitted page 4, which the Court presumes contains the date of the DHO decision.

untimely, as it was not initiated within 20 days from the DHO decision.

## DISCUSSION/ANALYSIS

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United States Supreme Court held that a prisoner is entitled to certain procedural due process protections if he is faced with either the loss of GCT or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. In disciplinary proceedings which could end in such severe penalties, the Court has dictated that the following minimal due process protections must be provided for the prisoner: (1) the right to appear before an impartial decision-making body; (2) 24-hour written notice of the charge; (3) a qualified right to call witnesses; and (4) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all of which the Supreme Court established earlier in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

Since the penalties imposed in this case included the loss of GCT, among others, Keys was entitled to these due process procedures. Based on the documentation Keys submitted concerning the escape charge and conviction, the Court concludes that he, in fact, received the due process protections prescribed by the Supreme Court in *Sandin v. Condin, supra*, in that (1) he had the right to and did appear before an impartial decision-making body;

(2) he received 24-hour written notice of the charge (the Incident Report was delivered to Keys on May 29, 2006, at 6:15 p.m., the UDC hearing was conducted on May 31, 2006, at 10:30 a.m., the Committee referred the charge to the DHO for further hearing, which was conducted on June 26, 2006); (3) he was advised of his right to call witnesses; however, on the BP-294 form he indicated he had no witnesses to call and at the DHO hearing, he waived his right to call witnesses; and (4) he received a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition (Section III. of  the DHO decision details the evidence on which the DHO relied (various memoranda contemporaneously written by the prison staff who conducted the inmate count and discovered that Keys was missing from his assigned bunk and were otherwise knowledgeable of the incident; Section VII of the DHO decision states the reasons for the disposition).

In the present action, Keys makes no claim that he did not receive any of the foregoing due process protections, and he has submitted no evidence of any irregularities before or during the DHO hearing.  Instead, Keys claims that the escape charge was fabricated, that it was based on falsified government documents to cover-up the prison staff's failure to respond to an emergency, and that it was retaliatory, in violation of his First Amendment rights.

At the outset, it appears that Keys perhaps mis-perceives the role of the Court in this matter. A district court's role in reviewing a disciplinary conviction is extremely limited. Under *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985), a disciplinary conviction must be upheld as consistent with due process so long as there is "some evidence" to support the decision.

Case law is replete with the guiding principle that the Court has no authority under the guise of due process to review the resolution of factual disputes in a disciplinary decision; a district court merely ensures that the disciplinary decision is not arbitrary and does have evidentiary support. *Superintendent,* 472 U.S. at 457. "Some evidence," as its name suggests, is a lenient standard. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). Even meager proof will suffice. *Id.* at 652.

In the instant case, the evidence before the DHO included the Incident Report, a memorandum from Officer Archer dated May 29, 2006, a memorandum from Officer Frederick dated May 29, 2006, and a memorandum from Officer Gottshall dated May 29, 2006. Keys was questioned by the DHO and denied the charge. His defense was that at the time of the inmate count, he was stuck in the ventilation system and could not be freed, which is why he was not in his assigned bunk on May 29, 2006, at 2:30 a.m. However, Keys did not provide the names of any other inmates who knew that he was stuck in the ventilation system at the time of the inmate count, and he

did not call any witnesses, as he had the right to do, to corroborate his claim of being stuck in the ventilation system. The DHO concluded that the greater weight of the evidence supports a finding that Keys was guilty of the escape charge. Thus, there was more than "some evidence" to support the DHO's finding that Keys was guilty of the escape charge, and there is no evidence that it was an arbitrary decision. Consequently, Keys' conviction of escape and the loss of GCT must stand.

Concerning Petitioner's claims that the escape charge was fabricated, that it was based on falsified government documents to cover-up the prison staff's failure to respond to an emergency, and that it was retaliatory, in violation of his First Amendment rights, these claims are simply unsupported conclusory allegations that are beyond the district court's scope of review in this case. To reiterate, a district court's role in reviewing a disciplinary conviction is extremely limited to ensure that certain minimum due process protections were afforded the prisoner. *Superintendent v. Hill*, *supra*.[2]

Accordingly, **IT IS ORDERED** as follows:

_____

[2] The venue for any retaliation claims Keys might assert against the Correctional Officers at FCI-Schuylkill for alleged violations of his constitutional rights in an action filed under *Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388 (1971), would be in the United States District Court for the Middle District of Pennsylvania.

(1) Darren Keys' Petition for Writ of Habeas Corpus is **DENIED**;

(2) this action will be **DISMISSED** from the docket of the Court; and Judgment will be entered contemporaneously with this Memorandum Opinion and Order in favor of the Respondent.

This the 29th day of November, 2010.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge